UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAMUEL SHAHEEN,

    Plaintiff,

v.

                                  Case Number 12-10030
                                  Honorable Thomas L. Ludington

HSBC BANK,

    Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART, DENYING IN PART, AND
HOLDING IN ABEYANCE IN PART DEFENDANT'S MOTION TO DISMISS
AND DIRECTING SUPPLEMENTAL BRIEFING ON JOINDER OF HARTFORD**

In the early 1980s, Plaintiff Samuel Shaheen invested in a number of commodities. Among his purchases, he bought about twenty thousand ounces of silver. Over the following decades, Plaintiff changed financial advisors. The bank in which the silver was deposited also changed. And the bank ownership changed as well. Amid this change, Plaintiff alleges, a bookkeeping error was made.

Instead of crediting Plaintiff's account with twenty thousand ounces of silver, Plaintiff alleges, a bank recorded that Plaintiff owned about thirty-five thousand ounces. Plaintiff did not notice the error. Later, the bank that had made the mistake merged into Defendant HSBC Bank. When Defendant took possession of Plaintiff's silver deposit in 1998, it did not notice the error either. Instead, it continued to issue records showing that Plaintiff had about thirty-five thousand ounces on deposit. And it continued to bill Plaintiff for storing this amount of silver. A decade passed.

In 2008, Plaintiff sought to sell his silver. As Plaintiff was unable to locate the original receipt of purchase, Defendant required that Plaintiff obtain a $670,000 bond to secure the sale. Plaintiff did so, purchasing the bond from Hartford Fire Insurance Company for $16,500. He then sold the silver for about $240,000. Sometime later, a third party claimed ownership of the fifteen thousand ounces that had been erroneously credited to Plaintiff's account. Defendant filed a claim against the bond with Hartford. This litigation followed.

Filing suit in state court, Plaintiff sought damages for the silver storage fees, bond premium, "potential liability . . . on the bond," and an order "prohibiting Defendant from making further demand on the bond." Defendant removed the case to this Court.

Defendant then answered, asserting several affirmative defenses. Defendant did not, however, file a counterclaim against Plaintiff seeking the $240,000 in proceeds from his sale of the disputed fifteen thousand ounces of silver.

Defendant instead filed a motion to dismiss for lack of subject matter jurisdiction, asserting Plaintiff's claims are not ripe. ECF No. 7. Defendant is correct that Plaintiff is not entitled to seek compensatory damages for potential liability on the bond. Plaintiff may, however, seek damages for the storage fees and bond premiums caused by Defendant's alleged negligence, as Plaintiff implicitly concedes that he is not entitled to the economic value of the disputed silver. *See* Compl. ¶ 26, ECF No. 1-1. And he may seek a declaratory judgment regarding Defendant's rights in the bond. Hartford, however, also appears to claim a substantial interest in the subject of this action. Yet Hartford has not been joined as a party.

Consequently, the Court will grant in part, deny in part, and hold in abeyance in part Defendant's motion. The Court will dismiss Plaintiff's claim for compensatory damages for potential liability on the bond, as this claim is not ripe. The Court will not dismiss Plaintiff's

claims for compensatory damages for the fees and premiums paid, as these claims are ripe. And the Court will hold in abeyance the decision on whether to assert jurisdiction over the declaratory judgment claim regarding Defendant's rights in the bond pending supplemental briefing. The Court will further direct the parties to brief the question of whether Hartford is a necessary party.

# I

As Defendant brings a facial challenge to Plaintiff's complaint, in deciding the motion the following facts from the complaint are assumed to be true.

In the early 1980s, Plaintiff purchased 19,844.06 troy ounces of silver. Initially, Robert Baird & Co. held the silver for Plaintiff, depositing it with Chase Manhattan Bank and Swiss Bank Corp. The complaint does not specify whether the terms of the depository agreement were memorialized in a written contract. And no contract is attached as an exhibit to either the complaint, answer, or the motion to dismiss for lack of subject matter jurisdiction.

Sometime later, Plaintiff transferred his silver holdings from Robert Baird & Co. to Raymond James & Associates. In the 1990s, the Republic National Bank of New York acquired the silver depositories of Chase Manhattan and Swiss Bank. Plaintiff's silver was transferred into Republic National's depository in 1998. (Again, the complaint does not specify whether a depository agreement was executed. No contract is attached as an exhibit.) Around this time, the complaint alleges, Republic National "negligently created a dual claim entry, erroneously showing that Plaintiff owned an additional 15,744.64 troy ounces of silver." Compl. ¶ 10. Records issued to Plaintiff reflected that he owned about thirty-five thousand ounces of silver. Storage fees increased accordingly.

In 2000, Republic National merged into Defendant HSBC Bank. Defendant did not notice the bookkeeping error. And so Defendant continued to issue "records and accounts

indicating that Plaintiff was the owner of [more than thirty-five thousand ounces of silver]." *Id*. ¶ 11. Likewise, "Defendant repeatedly billed Plaintiff for storage of the [thirty-five thousand ounces of silver] and Plaintiff paid the storage bills." *Id*. ¶ 12.

In 2008, Plaintiff wished to sell his silver. Preparing for the transaction, "Plaintiff discovered that his records and receipts relating to the Silver had been lost, misplaced, or destroyed." *Id*. ¶ 15. Defendant responded by providing "an 'Inventory by Commodity and Location Report' that specifically indicated that Plaintiff was the owner of the [thirty-five thousand ounces of silver]." *Id*. ¶ 17. Nevertheless, Defendant also "required Plaintiff to obtain a bond in the amount of $670,000.00 to secure the sale of the Silver." *Id*. ¶ 16. The record is silent as to why Defendant required a bond with a face value of $670,000 as security. Similarly, the record is silent as to what authority, if any, Defendant referenced in "requiring" the bond.

To obtain the bond from Harford, Plaintiff paid a premium of $16,750.00. The terms of this bond are not specified in the complaint. A copy of the bond is not attached as an exhibit to either the complaint, answer, or the motion to dismiss for lack of subject matter jurisdiction.

In 2009, Plaintiff sold the silver for $237,408.00. Sometime later (the complaint does not specify when), Defendant notified Plaintiff "that a third party has come forward, holding the original Silver receipts and demanding possession of the [15,744.64 ounces]." *Id*. ¶ 20. Filing a claim with Hartford, Defendant has sought the full amount of the bond, $670,000.00. Hartford has contested the claim.

In December 2011, Plaintiff filed suit against Defendant in state court. In pertinent part, the complaint alleges:

> 1998, Plaintiff's silver was transferred to Defendant's Depository, consistent with
> Defendant's acquisition of the depositories of Chase and Swiss Bank.

> In transferring Plaintiff's silver, Defendant negligently created a dual claim entry, erroneously showing that Plaintiff owned an additional 15,744.64 troy ounces of silver . . . .
>
> Defendant now maintains that Plaintiff never owned the [15,744.64 ounces of silver].
>
> Plaintiff purchased the bond and sold the Silver in the belief he owned the Silver as a result of Defendant's negligence and representations that it was holding the Silver for Plaintiff.
>
> Defendant has made a claim against the bond seeking $670,000.00.
>
> If Defendant's claim is paid, Hartford, which issued the bond, will demand up to $670,000.00 from Plaintiff.
>
> Due to Defendant's negligence, Plaintiff will suffer damages in excess of $449,342.00 as follows:
>
> ```
>   $670,000.00    potential liability to Hartford on the bond
> +  $16,750.00    cost of bond
> – $237,408.00    proceeds from the 2009 sale of the Silver
>   $449,342.00
> ```
>
> Defendant's claim on the bond exceeds Defendant's damages in any event, which are limited to the value of 15,744.64 troy ounces of silver on the date of replacement.
>
> In addition, Plaintiff has been damaged by the cost of silver storage charges paid to Defendant for the [additional 15,744.64 ounces] for approximately ten (10) years that Defendant showed the [15,744.64 ounces] as being held for the benefit of Plaintiff.

Compl. ¶¶ 9–10, 22–28.  Accordingly, Plaintiff sought an order "granting judgment against Defendant in the amount of $449,342.00 plus cost of storage charges paid to Defendant, plus interests, costs, and fees; prohibiting Defendant from making further demand on the bond; and, granting such other relief as the Court deems just and equitable." *Id*. ad damnum.

Attached to Plaintiff's complaint is a copy of the affidavit of claim that Defendant sent to Hartford. The affidavit, sworn to by Defendant's precious metals operations manager, provides in pertinent part:

> That Samuel Shaheen, hereinafter called Principal, is now and has been justly and truly indebted to Claimant in the sum of $670,000. . . .
>
> This Affidavit and the supporting documentation is furnished to the surety in support of the claim for the purpose of inducing Hartford Fire Ins Co. as surety for principal to pay said claim.
>
> Affiant has full knowledge of the statements contained herein and the basis therefore. Affiant is duly authorized by Claimant to make said statements, present said claim and bind the claimant to the statements contained herein.

Compl. Ex. B, at 2. The supporting documentation referenced in the affidavit elaborates:

> During the 1990s, HSBC (then known as Republic National Bank of New York, "Republic") acquired numerous precious metal depository businesses, including those of Chase Manhattan Bank and Swiss Bank Corp., etc.
>
> Robert W. Baird & Co., Inc. ("Baird") had silver on deposit with Chase and Swiss Bank. That silver (which is the silver at issue in relation to the Bond) was transferred to Republic's Depository in 1998 as a result of Republic acquiring those businesses.
>
> Per industry practice, Republic issued its own Republic receipts for Baird's silver. However, in order for a replacement receipt to be issued, a customer would need to surrender the original predecessor receipt. Because Baird never surrendered to Republic the original Chase and Swiss Bank receipts covering the silver at issue here, the Republic receipts were never issued to Baird but instead remained in Republic's depository.
>
> In 2001, HSBC, on Baird's instructions, updated the owner of record on the account for the silver from Baird to Raymond James & Associates, FBO Samuel Shaheen. Accordingly, HSBC stopped invoicing Baird for the silver storage fees and began billing Raymond James. Our records indicate that Raymond James paid storage on silver from that point onward. . . .
>
> [A]nother individual has recently come forward with the original Chase and Swiss Bank receipts for the silver at issue herein. Because these receipts are bearer receipts HSBC is obliged to rely on the Bond and fulfill its obligations as

> successor depository to Chase and Swiss Bank in providing silver in the amount referenced in the bond to the individual.
>
> We look forward to hearing from you. As I am sure you can appreciate, we would like to resolve and receive payment under our claim as quickly as possible, given the urgency under which we must perform our obligations pursuant to the original receipts.

*Id.* at 3–4 (footnote and formatting omitted). Hartford has contested Defendant's claim on the bond. (The grounds for this denial are not part of the record.) The claim remains outstanding.

In January 2012, Defendant removed the case to this Court based on diversity of citizenship. Alleging that the claims are not ripe, Defendant now moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) . ECF No. 7.

## II

Rule 12(b)(1) motions "fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Here, Defendant brings a facial attack, alleging that Plaintiff's claims are not ripe.

Facial attacks challenge the sufficiency of the pleading itself; in evaluating facial attacks, the court must accept the factual allegations as true and construe them in the light most favorable to the nonmoving party. *Id.* The burden of proof is on the plaintiff to demonstrate jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

## III

"Ripeness doctrine originates from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (internal alterations and quotation marks omitted) (quoting *Elend v. Basham*, 471 F.3d 1199, 1204–05 (11th Cir. 2006)). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe,

federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow v. Mich. Dep't Natural Res.*, 970 F.2d 154 (6th Cir. 1992) (quoting *S. Pac. Transp. Co. v. City of L.A.*, 922 F.2d 498, 502 (9th Cir. 1990)).

"Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review." *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, (1967)). A claim is ripe when it "presents existing, substantial controversy, not hypothetical questions or possibilities." *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 748 (6th Cir. 2002) (internal quotation marks omitted) (quoting *Dixie Fuel Co. v. Comm'r of Soc. Sec.*, 171 F.3d 1052, 1057 (6th Cir.1999)).

To evaluate ripeness, courts consider three factors: "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied." *Insomnia Inc. v. City of Memphis*, 278 F. App'x 609, 612 (6th Cir. 2008) (internal alterations omitted) (quoting *Warshak v. United States*, 490 F.3d 455, 467 (6th Cir. 2007)).

Here, the gravamen of Plaintiff's complaint — Defendant's negligent bookkeeping has injured Plaintiff financially and is about to again — is ripe. As discused below, two of the three categories of harms that Plaintiff seeks to recover on have come to pass. According to Plaintiff, his

> claims fall into three categories: 1.) Those based on damages already sustained by Plaintiff — payment of storage and bond premium costs; 2.) Damages that are "highly probable" — imminent payment pursuant to the bond; and, 3.) Request for declaratory relief — a judgment that Defendant is not legally entitled to

> recover the bond and prohibiting Defendant from making further demand on the bond.

Pl.'s Resp. 10, ECF No. 10. Excluding category two (which is not ripe for reasons discussed below), the facts relevant to these claims are all historical facts. Granted, the record presently before the Court is not well-developed regarding the specific terms of the relevant agreements. This, however, is an issue of pleading, not of subject matter jurisdiction. Ripeness concerns whether a court has jurisdiction over a claim, not whether a claim is pled with sufficient particularity. And two of the three categories of harm that Plaintiff alleges are ripe.

**A**

Plaintiff's second category of harms, however, is not ripe. This category seeks about $450,000 in compensatory damages for the "imminent payment pursuant to the bond." Pl.'s Resp. 10. As Defendant observes,

> in order for [Plaintiff] to suffer injury, [Defendant] must, as a threshold matter, be successful in obtaining reimbursement from the Hartford on the indemnity bond. To date, the Hartford continues to dispute liability to HSBC stemming from the bond in question. Moreover, even assuming, arguendo, that the Hartford changes its position and elects to remit payment to [Defendant], there can be no injury to [Plaintiff] unless and until the Hartford purses [sic] for the money paid under the bond.

Def.'s Mot. 6. Plaintiff acknowledges that he has not yet incurred these damages, but counters that "it is highly probably [sic] that Plaintiff will have to reimburse the bond company." Pl.'s Resp. 9. As discussed below, Plaintiff may obtain declaratory judgment on the parties' respective rights on the bond. He may not, however, seek compensatory damages for an injury that has not occurred.

"Recovery in tort," the Sixth Circuit observes, "seeks to restore the plaintiff to where he was before the defendant's wrongful conduct injured him." *Detroit Edison Co. v. NABCO, Inc.*,

35 F.3d 236, 239 (6th Cir. 1994) (citing *Neibarger v. Universal Cooperatives Inc.*, 486 N.W.2d 612 (Mich. 1992)). "Accordingly," the Michigan Supreme Court explains, "an individual is entitled to relief under a tort theory only when he has suffered a present injury." *Henry v. Dow Chemical Co.*, 701 N.W.2d 684, 689 (Mich. 2005). Dean Prosser elaborates:

> The threat of future harm is not enough. Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case some individual whose interests have suffered.

William Prosser, *Law of Torts* 143–44 (4th ed. 1971) (footnote omitted).

Fundamentally, compensatory damages are designed to undo the harm that the defendant caused. If the damage has not yet occurred, there is nothing to restore.

In *Henry*, for example, the plaintiffs alleged that the defendant negligently released dioxin into the Tittabawassee flood plain. 701 N.W.2d at 685. The plaintiffs did not, however, "allege that the defendant's negligence ha[d] actually caused the manifestation of disease or physical injury. Instead, they allege[d] that defendant's negligence ha[d] created the risk of disease." *Id.* at 686. To remedy this alleged negligence, the plaintiffs requested that the trial court certify a class of persons living in the flood plain and order "the creation of a program, to be funded by defendant and supervised by the court, that would monitor the class and their representatives for possible future manifestations of dioxin-related disease." *Id.* The defendant moved for summary disposition. The trial court denied the motion. Reversing, the Michigan Supreme Court, explained:

> Here, it is clear that plaintiffs do not claim that they have suffered any present physical harm because of defendant's allegedly negligent contamination of the Tittabawassee flood plain. Indeed, plaintiffs in their arguments to this Court expressly deny having any present physical injuries.

> Plaintiffs have not cited an exception to the rule that a present physical injury is required in order to state a claim based on negligence. . . . We can therefore reach only one conclusion: if the alleged damages cited by plaintiffs were incurred in anticipation of possible future injury rather than in response to present injuries, these pecuniary losses are not derived from an injury that is cognizable under Michigan tort law. . . .
>
> The logic behind this injury requirement — and, indeed, the very logic of tort law — is that of giving security to the rights of individuals by putting within their reach suitable redress whenever their rights have been actually violated. Accordingly, an individual is entitled to relief under a tort theory only when he has suffered a present injury.

*Id.* at 689 (internal quotation marks, footnotes, alterations, and citation omitted) (citing Thomas Cooley, *Cooley on Torts* § 32 (4th ed. 1932)).

In this case, Plaintiff's claim that he is entitled to about $450,000 in compensatory damages for the risk of the "imminent payment pursuant to the bond" does not allege a present injury. Plaintiff does not allege that Defendant's negligence has caused this harm. Merely that it might. (As Plaintiff puts it, "it is highly probably [sic]." Pl.'s Resp. 9.) The Court cannot order Defendant to pay Plaintiff for injuries that Plaintiff has not suffered.

B

The first category of harms, "payment of storage and bond premium costs," is ripe. The alleged injuries have already occurred. There is no question about whether these harms "will ever come come to pass." *Insomnia*, 278 F. App'x at 612. They have. Plaintiff paid Defendant. Since the relevant facts are historical facts, this category is ripe for resolution.

Arguing against this conclusion, Defendant asserts that "these expenses are not damages since they were necessary expenses incurred by Shaheen in order to sell the Silver." Def.'s Mot. to Dismiss 6, ECF No. 7. Defendant may be correct that the expenses were necessary. If Plaintiff is correct, however, the expenses were necessary only because of Defendant's

negligence. *See* Compl. ¶ 10 (quoted above). Accepting Plaintiff's allegations as true for purposes of deciding this facial attack to the complaint, if Defendant had accurately recorded how much silver Plaintiff owned, Plaintiff would not have had to pay for the excess storage. Likewise, if Defendant had kept accurate books, Defendant would have known exactly how much silver Plaintiff was entitled to sell. Plaintiff would not have had to obtain a bond. Plaintiff is entitled to attempt to recover these expenses.

**C**

Similarly, the claim for declaratory relief regarding Defendant's right to recover on the bond is ripe. Nevertheless, as detailed below, the Court will defer deciding whether to assume jurisdiction over this claim pending supplemental briefing on whether Hartford should be joined as a party.

Like other types of claims, those for declaratory relief must be ripe. *See, e.g.*, *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 535 (6th Cir. 2011). In pertinent part, the Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. Unlike a claim for compensatory damages, however, a claim for declaratory relief does not require present injury. An injury in the very near future may do.

Judge Sutton explains: "There are two potential theories of injury — 'actual' present injury and 'imminent' future injury." *Id.*; *see id*. at 537 (noting that "in this context, where the only Article III question concerns the imminence of the plaintiffs' injury, standing analysis parallels ripeness analysis"). "Imminence is a function of probability. And probabilities can be

measured by many things, including the certainty that an event will come to pass." *Thomas More*, 651 F.3d at 536.

This certainty (or its absence) has a direct relationship to ripeness. In essence, this is but another way of articulating the ripeness doctrine's purpose, which is "to prevent the courts, through premature adjudication from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co*., 473 U.S. 568, 580 (1985).

Here, the material events that convert the disagreement from abstract to actual — Defendant's demand on the bond and Hartford's refusal to pay — have happened. Before Defendant made the demand and Harford refused, the potential for disagreement existed. When Defendant's demand was made and refused, however, the potential became the concrete. Plaintiff's request for relief thus regards an actual dispute about the legal consequences of historical facts. It is ripe.

Arguing against this conclusion, Defendant writes in its response brief that "Plaintiff has failed to plead a proper claim for declaratory relief" because Plaintiff did not "make any reference to 'declaratory relief' or the 'Declaratory Judgment Act' in his Complaint." Def.'s Reply 4, ECF No. 11 (capitalization omitted). This not an argument that Plaintiff's claim is not ripe, of course. It is an argument that the claim is not pled with sufficient particularity. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Defendant, however, brings its motion pursuant to Rule 12(b)(1), not Rule 12 (b)(6). As noted, ripeness concerns whether a court has jurisdiction over a claim, not whether a claim is pled with sufficient particularity.

Even if the Court were to conclude that Defendant's 12(b)(6) argument is properly before the Court, Plaintiff's claim would nevertheless survive. Although Plaintiff does not expressly

reference the Declaratory Judgment Act in his complaint, Defendant offers no authority for the proposition that Plaintiff is required to do so. And an independent review of the authorities disclose no such requirement. *See generally* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2768 (3d ed. 1998). Wright, Miller, and Kane explain:

> The rules of good pleading are as important in a suit for a declaratory judgment as in any other civil action, but pleading is simple under the Civil Rules and technicalities are not allowed to prevail over substantial rights. All that is required is a simple statement of a claim on which relief can be granted showing that the court has jurisdiction and that an actual justiciable controversy is involved. A bare allegation that there is a controversy is not enough. The circumstances that have given rise to it should be shown and the interest of the parties made clear.

*Id*. (footnote omitted).

Here, the complaint alleges that Defendant negligently credited Plaintiff's account about thirty-five thousand ounces of silver when Plaintiff actually owned only twenty thousand. Because of Defendant's negligence, when Plaintiff sought to sell the silver, Defendant was unable to determine how much Plaintiff owned. Consequently, Defendant required that Plaintiff obtain a $670,000 bond. Plaintiff did. He then sold the silver. Since the sale, a third party has claimed ownership of the fifteen thousand ounces. Defendant, in turn, has filed a claim against the bond. Because the claim is contested, payment on the bond has not been made. Based on these alleged facts, the complaint seeks an order "prohibiting Defendant from making further demand on the bond" and "granting such other relief as the Court deems just and equitable."

Although Plaintiff's request for relief is not exhaustively detailed, when coupled with the facts alleged, it is sufficient to put Defendant on notice that Plaintiff seeks declaratory relief.

IV

Finally, as noted, the record before the Court suggests that Hartford also claims an interest relating to the subject of the action. Federal Rule of Civil Procedure 19 provides in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . .
>
> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

A court may take note of the nonjoinder of such a party sua sponte. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968); *Boles v. Greeneville Housing Auth.*, 468 F.2d 476, 479 n.4 (6th Cir. 1972); *see generally* Wright, Miller, and Kane, *supra* § 1609 ("Any party may bring the issue to the court's attention, and both the trial court and appellate court may take note of the nonjoinder of an indispensible party sua sponte.").

The parties will be directed to brief whether Hartford ought to be joined and, if so, whether such joinder is feasible.

V

Accordingly, it is **ORDERED** that Defendants' motion to dismiss (ECF No. 7) is **GRANTED IN PART, DENIED IN PART, and HELD IN ABEYANCE**.

It is further **ORDERED** that Plaintiff's claim for compensatory damages for the "imminent payment pursuant to the bond" is dismissed as not ripe.

It is further **ORDERED** that Plaintiff's claim for declaratory judgment regarding Defendant's right to recover on the bond is held in abeyance pending supplemental briefing on whether Hartford should be joined as a party.

It is further **ORDERED** that the parties are each directed to file a brief on or before Friday, **May 18, 2012**, addressing whether Hartford should be joined as a party, and, if so, whether such joinder is feasible. Each party may file a response brief on or before Friday, **May 25, 2012**.

Dated: May 9, 2012

        /s/Thomas L. Ludington
        THOMAS L. LUDINGTON
        United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 9, 2012.

        s/Tracy A. Jacobs
        TRACY A. JACOBS

---